UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

LEYLA REGINA NAVARRETE,     Petitioner,

v.     Civil Action No. 4:25-cv-157-DJH

KRISTI NOEM, Secretary of the U.S.
Department of Homeland Security et al.,     Respondents.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

Leyla Regina Navarrete, a noncitizen resident of Indiana currently detained in the Western District of Kentucky, petitions the Court for a writ of habeas corpus, claiming that she has been unlawfully detained under the Immigration and Nationality Act and in violation of due process. She seeks immediate release or, in the alternative, a bond hearing. (Docket No. 1) Respondents oppose Navarrete's petition and ask the Court to dismiss it for lack of jurisdiction. (D.N. 9) The Court held a hearing on November 26, 2025, during which the parties agreed that the relevant facts asserted in the petition were not in dispute. For the reasons explained below, the Court will deny Respondents' motion, grant Navarrete's petition, and order her immediate release.

**I.**

Navarrete is a native and citizen of Nicaragua. (D.N. 1, PageID.6 ¶ 20) She has been living in Indiana for approximately three years, having first entered the United States on September 13, 2022. (*Id.* ¶¶ 20–21) Upon entering the United States, she "presented [herself] to immigration authorities" and was released on conditional parole. (*Id.* ¶ 22) Almost a year later, on September 7, 2023, Navarrete applied for asylum. (D.N. 1-1, PageID.23) Since entering the United States, Navarrete has obtained a valid work permit and a social security number. (D.N. 1, PageID.6 ¶ 22;

D.N. 1-1, PageID.21–22)  On August 7, 2025, Navarrete attended a scheduled U.S. Immigration and Customs Enforcement (ICE) appointment in Indianapolis and was detained.  (D.N. 1, PageID.6 ¶ 24)  Following her detention, an expedited removal order was issued against her.  (*Id.*)  Navarrete requested a credible-fear interview (CFI) based on her asylum claim.[1]  (*Id.*, PageID.7 ¶ 24)  A CFI was held on August 25, 2025 (*id.* ¶ 26), and on August 29, 2025, the officer who conducted the interview found that Navarrete did not have a credible fear.  (*Id.* ¶ 27; D.N. 1-1, PageID.26–27)

On November 4, 2025, an immigration judge conducted a bond hearing.  (D.N. 1, PageID.8–9 ¶ 34)  The immigration judge stated that he lacked jurisdiction (D.N. 1-1, PageID.31) and made an alternative finding that if he possessed jurisdiction, he would have issued a bond in the lowest statutory amount.  (*See* D.N. 1, PageID.9 ¶ 34)  Navarrete is currently detained at the Grayson County Detention Center.  (*Id.*, PageID.5 ¶ 14; D.N. 1-1, PageID.37)  She is eight months pregnant.  (D.N. 1, PageID.6 ¶ 20; D.N. 1-1, PageID.48, 51)  She petitions the Court for a writ of habeas corpus against Department of Homeland Security Secretary Kristi Noem, U.S. Attorney General Pamela Bondi, Grayson County Jailer Jason Woosley, Chicago ICE Field Office Director Sam Olson, Acting Director of ICE Todd Lyons, Detroit ICE Field Office Director Robert Lynch, and Director of the Executive Office for Immigration Review Daren Margolin.  (D.N. 1, PageID.1, 5–6 ¶¶ 15–20)  Respondents maintain that (1) the Court lacks jurisdiction to hear the habeas petition; (2) Navarrete is lawfully detained under 8 U.S.C. § 1225, not § 1226, and thus is not entitled to release or a bond hearing; (3) her detention does not violate due process; and (4) even

---

[1] The asylum claim is based on Navarrete's prior involvement in political protests in Nicaragua. (D.N. 1, PageID.6–7 ¶¶ 20, 24)

if the Court concludes that Navarrete is detained under § 1226, she should not be released. (*See* D.N. 9, PageID.114–17, 128–30)

## II.

### A. Jurisdiction

Respondents argue that 8 U.S.C. § 1252(b)(9) deprives the Court of jurisdiction to hear this dispute. (*Id.*, PageID.114–15)  That provision states that

> [j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.  Except as otherwise provided in this section, no court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 or any other habeas corpus provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

§ 1252(b)(9).  "[T]he Supreme Court has held that § 1252(b)(9) does not prohibit courts from hearing cases challenging whether bond hearings are required in removal proceedings." *Alonso v. Tindall*, No. 3:25-cv-652-DJH, 2025 WL 3083920, at *2 n.5 (W.D. Ky. Nov. 4, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018)).  Therefore, the Court will not dismiss the petition for lack of jurisdiction.  *See id.*

### B. Lawfulness of Detention

Petitioner contends that she falls under § 1226(a), not § 1225(b)(2), and thus is not subject to mandatory detention. (D.N. 1, PageID.11–13 ¶¶ 45–51)  Respondents claim that Navarrete is lawfully detained as an applicant for admission who is seeking admission under § 1225(b)(2). (D.N. 9, PageID.115–16)  Respondents argue that when § 1225(b)(2) discusses aliens "seeking admission," it is referring to all "applicant[s] for admission" and that the statute covers individuals like Navarrete, who are present in the United States and seeking asylum. (*Id.*, PageID.117–18)

3

Respondents cite *In re Yajure Hurtado*, 29 I&N Dec. 216, 223 (BIA 2025), a Board of Immigration Appeals (BIA) decision, in support of their argument and suggest that the Court should give that decision deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). (D.N. 9, PageID.126)

The Court has previously rejected the government's argument that § 1225(b)(2) applies to individuals who have been present in the United States for an extended period. *See Salinas v. Woosley*, No. 4:25-cv-121-DJH, 2025 WL 3243837, at *2 (W.D. Ky. Nov. 20, 2025). The fact that Navarrete sought asylum almost a year after entering the United States (D.N. 1-1, PageID.23) does not render § 1225(b)(2) applicable because she did not apply at the border. *See Santos Franco v. Raycraft*, No. 2:25-cv-13188, 2025 WL 2977118, at *7 (E.D. Mich. Oct. 21, 2025); *Lopez v. Olson*, No. 3:25-cv-654-DJH, 2025 WL 3217036, at *3 n.5 (W.D. Ky. Nov. 18, 2025).

Nor will the Court defer to the BIA's decision. Under *Skidmore*, agency decisions are not "controlling upon the courts." 323 U.S. at 140. Rather, an agency's "interpretation is 'entitled to respect' only to the extent it 'has the power to persuade,'" *Gonzales v. Oregon*, 546 U.S. 243, 256 (2006) (quoting *Skidmore*, 323 U.S. at 140), based on, among other factors, the "thoroughness evident in its consideration, the validity of its reasoning, [and] its consistency with earlier and later pronouncements." *Skidmore*, 323 U.S. at 140. This Court's prior opinions addressing the same issue and the same statutory provisions show why it does not find the BIA's reasoning persuasive. *See Alonso*, 2025 WL 3083920, at *4–8; *Lopez*, 2025 WL 3217036, at *3; *Salinas*, 2025 WL 3243837, at *2–3. Moreover, the decision is not consistent with other BIA pronouncements, *see Skidmore*, 323 U.S. at 140; on the contrary, *In re Yajure Hurtado* "pivot[ed] from three decades of consistent statutory interpretation." *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *7 (E.D. Mich. Sep. 9, 2025); *see also id.* at *7–8 (analyzing legislative history, agency guidance, and agency practice behind the current version of § 1226(a) and finding that "[f]or

4

almost three decades, most noncitizens who entered without inspection that were placed in standard removal proceedings received bond hearings, unless subject to an exception"). Thus, the Court will not afford *Skidmore* deference to *In re Yajure Hurtado*. *Skidmore*, 323 U.S. at 140; *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (noting that deference to an agency's interpretation may be "especially warranted" where the agency's decisions have "remained consistent over time" (citations omitted)); *see also Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *9 (N.D. Cal. Sep. 12, 2025) (declining to give *Skidmore* deference to *In re Yajure Hurtado* based on the BIA's "inconsistent" pronouncements and concluding that the "BIA's reasoning [in that case] lacks persuasive power").

Respondents also rely on *Altamirano Ramos v. Lyons*, No. 2:25-cv-09785-SVW-AJR, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025). In that case, a district court found that § 1225(b) applied, citing the "entry fiction doctrine" in support. *Id.* at *7. "Under that doctrine, an alien who is physically present but has not been lawfully admitted into the country is 'legally considered to be detained at the border and hence as never having effected entry into this country.'" *Id.* (quoting *Alvarez-Garcia v. Ashcroft*, 378 F.3d 1094, 1097 (9th Cir. 2004)). Courts in the Sixth Circuit, however, have refused to apply this doctrine under § 1225 to noncitizens who have been present in the United States for extended periods. *See Am.-Arab Anti-Discrimination Comm. v. Ashcroft*, 272 F. Supp. 2d 650, 667–68 (E.D. Mich. 2003) ("Respondents still have not provided any authority to show that expedited removal applies to aliens who are 'arriving aliens' based solely on the entry fiction doctrine and who have been residing in the interior of the United States for some time.").

Consistent with its prior decisions, the Court concludes that § 1226 applies to Navarrete's detention. *Alonso*, 2025 WL 3083920, at *4–8; *Salinas*, 2025 WL 3243837, at *2.

5

C.      **Due Process**

Navarrete claims that her detention violates due process under the Fifth Amendment. (D.N. 1, PageID.14 ¶¶ 56–60)  Respondents contend that there was no due process violation because (1) Navarrete "does not have due process rights beyond those provided in § 1225" (D.N. 9, PageID.128 (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020))); (2) "applicants for admission have limited liberty interests, while the United States has 'a powerful interest in maintaining [her] detention in order to ensure that removal actually occurs'" (*id.* (quoting *Rojas v. Olson*, No. 25-cv-1437-bhl, 2025 WL 3033967, at *13–14 (E.D. Wis. Oct. 30, 2025))); and (3) there is little chance of an erroneous deprivation of rights because Navarrete is subject to removal (*id.* (citing *Rojas*, 2025 WL 3033967, at *13)).

"Aliens, even aliens whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth and Fourteenth Amendments." *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (citations omitted).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted).  To determine whether civil detention violates due process, the Court applies the three-part balancing test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *Barrera v. Tindall*, No. 3:25-cv-541-RGJ, 2025 WL 2690565, at *6 (W.D. Ky. Sep. 19, 2025).  Under that test,

> [t]he Court must weigh: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the United States' interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* (citing *Mathews*, 424 U.S. at 335).

As an initial matter, Navarrete's due process rights are not limited to what is contained in § 1225. The statement from *Thuraissigiam* cited by the government concerned the rights of a noncitizen who was apprehended shortly after crossing the border and was subject to the provisions of § 1225(b). *See* 591 U.S. at 114, 140. As explained above, Navarrete is not subject to § 1225(b). *See Alonso*, 2025 WL 3083920, at *4–8.

All three *Mathews* factors support granting Navarrete a hearing. First, it is "undisputed [that Navarrete] has a significant private interest in not being detained." *Barrera*, 2025 WL 2690565, at *6. Second, "the risk of erroneously depriving h[er] of h[er] freedom is high if the [immigration judge] fails to assess h[er] risk of flight and dangerousness." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *9 (E.D. Mich. Aug. 29, 2025); *see also* 8 C.F.R. § 1236.1(c)(8), (d)(1). The government's argument that there is little chance of an erroneous deprivation of rights because Navarrete is subject to removal misses the point: the right at issue is freedom from restraint, not ultimate admittance into the United States. *See Barrera*, 2025 WL 2690565, at *6. Third, a "routine bond hearing before an [immigration judge]" presents "minimal" fiscal and administrative burdens, and "there is an established process for doing so that [the Department of Homeland Security] can readily follow here." *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *15 (E.D.N.Y. Oct. 6, 2025). The Court thus concludes that detaining Navarrete without providing her a bond hearing violates due process. *Orellana v. Noem*, No. 4:25-cv-112-RGJ, 2025 WL 3006763, at *6 (W.D. Ky. Oct. 27, 2025); *Barrera*, 2025 WL 2690565, at *7; *Lopez-Campos*, 2025 WL 2496379, at *9–10.

**D.    Remedy**

According to Respondents, "Section 1226(a) does not provide an alien with a right to release on bond," and thus "[a] finding that a detained alien should be detained under § 1226,

7

rather than § 1225(b)(2), is not a finding for release, but rather a finding that the alien should be detained, unless he moves the immigration court for a bond and is so granted." (D.N. 9, PageID.130)

"Habeas has traditionally been a means to secure *release* from unlawful detention." *Thuraissigiam*, 591 U.S. at 107; *see also Zadvydas*, 533 U.S. at 687. In accordance with this understanding, "courts across the country have ordered the release of individuals stemming from ICE's illegal detention." *Orellana*, 2025 WL 3006763, at *6 (collecting cases).

Under § 1226, the Attorney General has discretion to release a noncitizen on bond or conditional parole while a removal decision is pending. 8 U.S.C. § 1226(a)(2). But here, Navarrete has been denied the opportunity to pursue the process provided under § 1226(a) and its accompanying regulations; namely she has not received the chance for a bond hearing on the merits. *See Alonso*, 2025 WL 3083920, at *5 (citations omitted); 8 C.F.R. § 1236.1(d)(1). As the Court has previously observed, ordering release in addition to a bond hearing does not unduly interfere with pending removal proceedings or usurp the role of the immigration judge. *See Salinas*, 2025 WL 3243837, at *5. Therefore, the Court will order that Navarrete be immediately released.

### III.

For the reasons stated above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)    Respondents' motion to dismiss (D.N. 9) is **DENIED**.

(2)    Navarrete's petition for a writ of habeas corpus (D.N. 1) is **GRANTED**. Respondents are **DIRECTED** to release Navarrete immediately, and, if she is arrested and re-

detained, provide her with a bond hearing before a neutral Immigration Judge pursuant to 8 U.S.C. § 1226(a). The United States **SHALL** certify compliance with the Court's Order by a filing on the docket. While release should be immediate, notice of the release may be delayed until **Monday, December 1, 2025,** due to the intervening holiday.

(3)   Upon receipt of compliance, this matter will be **CLOSED**.

November 26, 2025

David J. Hale, Chief Judge
United States District Court